UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DERRICK COOTE,

*Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

*Defendants*.

No. 24-CV-8964 (KMK)

OPINION & ORDER

Appearances:

Christina T. Hall, Esq.
Yesero T. Olowo-Okello, Esq.
Law Office of Christina T. Hall and Associates PLLC
Harrison, NY
*Counsel for Plaintiff*

Rachel Kroll, Esq.
United States Attorney's Office, Southern District of New York
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Derrick Coote ("Plaintiff") brings this Action against the United States of America, a Federal Bureau of Investigation ("FBI") agent only named as "Gonyo," an FBI Safe Streets Task Force officer named Bobby Lombardi ("Lombardi"), and those agents' unnamed supervisor (together, "Defendants"), claiming they used excessive force against him while executing a search warrant at his house. Before the Court is Defendants' Motion to Dismiss. For the following reasons, the Court denies the Motion as to the Complaint's Fourth Count only as asserted against the United States under the Federal Tort Claims Act ("FTCA"), and grants it as to the remaining counts.

# I. Background

## A. Factual Background

The following facts are drawn from Plaintiff's Complaint and are assumed true for the purpose of resolving the instant Motion. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023) ("The factual summary below is derived from the allegations in the [complaint], which we must accept as true in reviewing a motion to dismiss.").

Plaintiff, a "visibly blind" man aged eighty-one or eighty-two at the time, was at home in Mount Vernon on August 7, 2023, when local and federal law enforcement officers—including Gonyo and Lombardi—used a battering ram to forcibly enter his home to execute a search warrant for evidence relating to a murder. (*See* Compl. ¶¶ 20–22 (Dkt. No. 1); *see also* Pl.'s Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Mem.") 10 (Dkt. No. 33) (conceding that Plaintiff is not challenging the validity of the search warrant.) Shortly after entering, officers handcuffed Plaintiff, "grabbed" him, and "slammed" him to the floor, leaving Plaintiff restrained for about fifteen minutes while they conducted the search, even "after it was clear that [he] posed no threat." (Compl. ¶ 21.)

Plaintiff claims the officers cuffed him "with such force" as to cause him "a contusion and laceration to his left hand and wrist, abrasions down the left side of his arm, [and] bilateral wrist cuff marks." (*Id.*) Plaintiff also "suffered injuries to his right knee" and "to his lower back, including a lumbar sprain" during the encounter, along with "lasting emotional trauma." (*Id.* ¶¶ 26–28.) Plaintiff submitted an Administrative Tort Claim for compensation for these injuries to the Department of Justice, the FBI, and the Bureau of Alcohol, Tobacco, and Firearms. (*Id.* ¶ 4.) Just under six months after the Department of Justice denied Plaintiff's administrative claim, he brought this Action. (*Id.* ¶ 6.)

B. Procedural Background

Plaintiff initiated this Action on November 22, 2024, asserting six counts: (1) against the United States, under the FTCA, for false arrest; (2) against Gonyo and Lombardi in their individual and official capacities, under *Bivens*; (3) against Gonyo's and Lombardi's supervisor, also under *Bivens*; (4) against all Defendants, under the FTCA; (5) against Gonyo and Lombardi specifically, under the FTCA; and (6) against Gonyo, Lombardi, and the United States for common-law assault and battery. (*See* Compl.) After two extensions of their time to answer or move to dismiss, Defendants filed the instant Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim on December 9, 2025. (*See* Mot. to Dismiss (the "Motion") (Dkt. No. 29); Mem. in Supp. re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 30).) After an extension of Plaintiff's time to oppose the Motion, Plaintiff filed his Memorandum in Opposition on January 27, 2026. (Pl.'s Mem. in Opp'n re: Mot. to Dismiss ("Pl.'s Mem.") (Dkt. No. 33).) Defendants replied on February 10, 2026. (Defs.' Reply Mem. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 34).)

## II. Discussion

A. Standard of Review

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'" *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)). "The only substantive difference is 'that the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof.'" *Superior Biologics NY, Inc. v. Aetna, Inc.*, No. 20-CV-5291, 2022 WL

4110784, at *3 (S.D.N.Y. Sept. 8, 2022) (quoting *Lerner*, 318 F.3d at 128); *see also Langella v. Bush*, 306 F. Supp. 2d 459, 463 (S.D.N.Y. 2004) ("On a motion to dismiss pursuant to Rule 12(b)(1), plaintiff carries the burden of establishing that subject matter jurisdiction exists over his complaint.").

1. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters of which judicial notice can be taken in ascertaining facts for a motion to dismiss).

2. Rule 12(b)(1)

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *PharmacyChecker.com LLC v. Nat'l Ass'n of Bds. of Pharmacy*, No. 19-CV-7577, 2024 WL 1199500, at *2 (S.D.N.Y. Mar. 20, 2024) (quoting *Biener v. Credit Control Servs.*,

*Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *3 (S.D.N.Y. Mar. 14, 2023) (alteration in original)); *see also Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (same) (citing *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000)). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (citation omitted)).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Id.*; *see Contec, LLC v. Commc'ns Test Design, Inc.*, No. 18-CV-1172, 2019 WL 4736455, at *1 n.1 (N.D.N.Y. Sept. 27, 2019) ("[W]hen a question of the [d]istrict [c]ourt's jurisdiction is raised . . . the court may inquire, by affidavits or otherwise, into the facts as they exist." (quoting *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 401 (2d Cir. 2003)); *Faucette v. Colvin*, No. 15-CV-8495, 2016 WL 866350, at *2 n.5 (S.D.N.Y. Mar. 3, 2016) (same).

B. Analysis

1. *Bivens* Claims

The Complaint's Second and Third Counts are against Gonyo, Lombardi, and their unnamed supervisor, premised on the direct cause of action for damages against federal agents for violating the Constitution that the Supreme Court recognized in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (*See* Compl. ¶¶ 40–64.) The Court will only discuss the *Bivens* claims against Gonyo and Lombardi because Plaintiff abandoned his claims against their unnamed supervisor. (*See* Reply 2 n.1.) And before embarking on the rest of its analysis, the Court "start[s], as [it] must, with . . . subject matter jurisdiction," *United States v. Prevezon Holdings, Ltd.*, 839 F.3d 227, 235 (2d Cir. 2016), and dismisses Plaintiff's *Bivens* claims against Gonyo and Lombardi in their official capacities because *Bivens* claims against "individual federal defendants in their official capacities [must be] dismissed for want of subject matter jurisdiction" under the doctrine of sovereign immunity, *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).

In *Bivens*, "the Supreme Court 'recognized for the first time an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights.'" *Arrar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* "broke new ground by holding that a person claiming to be the victim of an unlawful arrest and search could bring a Fourth Amendment claim for damages against the responsible agents even though no federal statute authorized such a claim." *Hernandez v. Mesa*, 589 U.S. 93, 99 (2020). The Supreme Court has extended *Bivens* only twice: first, in *Davis v. Passman*, 442 U.S. 228 (1979), where the Court held that a former congressional staffer could bring a sex discrimination claim under the Due Process Clause of the

Fifth Amendment against her former employer for her termination, *see id.* at 248–49; and second, in *Carlson v. Green*, 446 U.S. 14 (1980), where the Court held that the administratrix of the estate of a deceased federal prisoner could bring an Eighth Amendment claim for failure to provide adequate medical treatment for the prisoner's asthma, which resulted in his death, *see id.* at 23–25. These two extensions notwithstanding, the Supreme Court has stated that expansion of *Bivens* is "a 'disfavored' judicial activity." *Hernandez*, 589 U.S. at 101 (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013) (explaining that a remedy under *Bivens* "is a judicially created remedy," and, therefore, "federal courts have been reluctant to recognize such implied relief"). Indeed, the Supreme Court has stated that if "the [Supreme] Court's three *Bivens* cases [had] been decided today, it is doubtful that [it] would have reached the same result" and that, "for almost 40 years, [the Supreme Court] has consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez*, 589 U.S. at 101–02 (quotation marks and alterations omitted) (collecting cases).

"When asked to extend *Bivens*, [courts] engage in a two-step inquiry." *Hernandez*, 589 U.S. at 102; *see also Egbert v. Boule*, 596 U.S. 482, 492 (2022) ("To inform a court's analysis of a proposed *Bivens* claim, our cases have framed the inquiry as proceeding in two steps."). "[Courts] first inquire whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez*, 589 U.S. at 102 (quoting *Malesko*, 534 U.S. at 68); *Egbert*, 596 U.S. at 492. If a court finds that a claim arises in a new context, the court proceeds to the second step and asks whether there are "any 'special factors [that] counse[l] hesitation' about granting the extension." *Hernandez*, 589 U.S. at 102 (quoting *Abbasi*, 582 U.S. at 136); *see also Egbert*, 596 U.S. at 492. But "[t]his two-step inquiry often resolves to a single

question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

The Court begins with the first step—whether Plaintiff's claim arises in a new context—and concludes that it does. "The [Supreme] Court has stressed that its understanding of a new context is broad." *Powell v. United States*, No. 19-CV-11351, 2020 WL 5126392, at *5 (S.D.N.Y. Aug. 31, 2020) (quoting *Hernandez*, 589 U.S. at 102) (quotation marks omitted). "Although the [Supreme] Court has not yet 'endeavor[ed] to create an exhaustive list of differences that are meaningful enough to make a given context a new one,' it has provided some instructive examples." *Id.* (quoting *Abbasi*, 582 U.S. at 139). For example:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 582 U.S. at 139–40. "'[E]ven a modest extension' of one of the three recognized scenarios 'is still an extension' that presents a new context." *Cruz v. Hastings*, No. 20-CV-4392, 2021 WL 4691375, at *6 (S.D.N.Y. Oct. 6, 2021) (quoting *Abbasi*, 582 U.S. at 147).

Although "[m]any facets of Plaintiff's case closely resemble the facts of *Bivens*," *Gray v. Gomez*, 728 F. Supp. 3d 264, 269 (E.D.N.Y. 2024), in that federal agents searched Plaintiff's home and used force to detain him while they did so, this case presents a new context because it "differ[s] in a meaningful way," *Abbasi*, 582 U.S. at 139, from *Bivens*. While *Bivens* concerned a claim under the Fourth Amendment about an "arrest and search [that] were effected *without* a warrant" and "unreasonable force [that] was employed in . . . arrest[ing]" the plaintiff there, *Bivens*, 403 U.S. at 389 (emphasis added), this case concerns an arrest to execute a search

warrant, the validity of which Plaintiff does not contest, (*see* Pl.'s Mem. 10). Courts in different Circuits have split on whether the existence of a warrant supports concluding a *Bivens* Fourth Amendment claim arises in a new context, and the Second Circuit has not weighed in. *Compare Orellana v. Godec*, 145 F.4th 516, 525 (4th Cir. 2025) ("The . . . officers had a warrant to search for [the plaintiff]. . . . [T]hat warrant means [the plaintiff's Fourth Amendment excessive force] case involves a different right—and different policy implications—than *Bivens*. And under Supreme Court precedent, that . . . make[s] this a new context."), *and Massaquoi v. Fed. Bureau of Investigation*, No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (holding the plaintiff's "Fourth Amendment claim presents a new *Bivens* context because the agents had a search warrant, and the claim involves a new category of defendants, the FBI agents"), *and Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *3 (6th Cir. July 25, 2023) ("Although *Bivens* also involved an entry by law enforcement into a private residence, this case is meaningfully different because . . . [the defendants] were attempting to execute an arrest warrant of a third party . . . . Indeed, courts in several recent cases have found that the existence of a warrant creates a new context for *Bivens* purposes." (collecting cases)), *with Arias v. Herzon*, 150 F.4th 27, 37 (1st Cir. 2025) ("[T]he defendants argue, because the officers in *Bivens* did not have a warrant, the officers here[, who did,] were operating under a different legal mandate. We are not convinced."), *petition for cert. filed*, No. 26-111 (U.S. July 23, 2026), *and Logsdon v. United States Marshal Service*, 91 F.4th 1352, 1357 (10th Cir. 2024) ("agree[ing]" that "the warrant and location of the arrest have no legal significance in an excessive-force case" in determining whether claim presented new context under *Bivens*), *and Snowden v. Henning*, 72 F.4th 237, 247 (7th Cir. 2023) ("Hotel or home, warrant or no warrant—the claims here and in *Bivens* stem from run-of-the-mill allegations of excessive force during an arrest.").

The Court agrees with those courts that have found the presence of a warrant works a meaningful change in context from *Bivens*, a case described in *Abbasi* as "a claim against FBI agents for handcuffing a man in his own home *without* a warrant." 582 U.S. at 140 (emphasis added). *Bivens* demarcated the rights infringed in that case as "primarily rights of privacy." *Bivens*, 403 U.S. at 390. That means a different Fourth Amendment right and a different legal mandate are implicated in this excessive force case, where Plaintiff was detained to effectuate a concededly valid warrant, than was implicated in *Bivens*: Plaintiff has not argued Gonyo or Lombardi compromised his constitutional privacy right. *See Martinez v. D'Agata*, No. 16-CV-44, 2019 WL 6895436, at *7 (S.D.N.Y. Dec. 18, 2019) (finding a new context in part because "*Bivens* reasoned that the right at issue was primarily a Fourth Amendment right to privacy, whereas here the Fourth Amendment right [the] plaintiff asserts is to be free from excessive force"); *Rivera v. Samilo*, 370 F. Supp. 3d 362, 369 (E.D.N.Y. 2019) ("The constitutional right at issue in *Bivens* was the plaintiff's [right to] privacy. In this case, [the p]laintiff's claim is not for a violation of his privacy rights, or for a warrantless invasion of his home and the unreasonable search and seizure of his property. Instead, [the p]laintiff's claim arises from the force allegedly applied in making a lawful . . . arrest.").

Not only is the right at issue different, but because the officers had a valid search warrant, the legal mandate under which they operated differed, too. Unlike the officers in *Bivens*, Gonyo and Lombardi had authority to be where they were, when they were, and under Supreme Court precedent in *Muehler v. Mena*, to use *some* reasonable force to execute the warrant if force was called for, unlike the officers in *Bivens*. *See Lewis v. Westfield*, 640 F. Supp. 3d 249, 254 (E.D.N.Y. 2022) (explaining that the defendants in an excessive force case were "act[ing] under a different 'legal mandate' than the defendants in *Bivens*" because they "were executing an arrest

warrant, pursuant" to their authority to do so); *Sosa v. Bustos*, No. 17-CV-417, 2020 WL 1940550, at *4 (S.D.N.Y. Apr. 22, 2020) ("[T]he law enforcement officers in this case were acting pursuant to a different legal mandate. In *Bivens*, the . . . lack of a warrant effectively gave rise to the plaintiff's Fourth Amendment claim. . . . Here, [the plaintiff] . . . concedes that the officers had a valid warrant to enter his home . . . . The Court therefore finds that the officers' legal mandate in this case also differs from that of the officers in *Bivens*."); *see generally Muehler v. Mena*, 544 U.S. 93, 95 (2005) (holding officer's detention of a plaintiff in handcuffs pending execution of a search warrant was reasonable under the circumstances and consistent with the Fourth Amendment). Thus, the presence of a valid warrant here weighs in favor of finding a new context based on the different right at issue and the different mandate under which Gonyo and Lombardi operated. *See Lewis*, 640 F. Supp. 3d at 254 (finding a new context in excessive force claim during execution of valid warrant); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 371 (S.D.N.Y. 2020) (finding a new context where the plaintiff, unlike the plaintiff in *Bivens*, "alleged that she is the unwitting victim of collateral damage stemming from [the d]efendants' execution of an arrest warrant").[1]

---

[1] Courts have not found that the similarities Plaintiff urges can outweigh meaningful differences. First, that "arresting federal agents used unreasonable force in attempting to make an arrest" in *Bivens*, as alleged here, (*see* Pl.'s Mem. 10), does not make the context the same if the character of the right asserted, or the legal mandate under which those officers operated, is different. *See Egbert*, 596 U.S. at 495 ("While *Bivens* and this case do involve similar allegations of excessive force [by federal agents] and thus arguably present almost parallel circumstances or a similar mechanism of injury, these superficial similarities are not enough to support the judicial creation of a cause of action."); *Sosa*, 2020 WL 1940550, at *4 (explaining that as "the right at issue in *Bivens* was primarily a privacy right, not a right to be free of excessive force," the plaintiff's "claims concern a different constitutional right" than in *Bivens*, so present a new context). Second, that the officers here were also "arresting agents," (Pl.'s Mem. 11), also does not make the character of these claims the same despite the noted differences. *See Lewis*, 640 F. Supp. 3d at 254 (rejecting *Bivens* remedy against federal officers effecting arrest warrant where other variables would have made the case a new context). And

The Court next concludes, at the second step, that special factors counsel hesitation before extending *Bivens* to this new context. The Supreme Court explained in *Egbert* that if the "Government already has provided alternative remedies that protect" similarly situated plaintiffs, that provides a "reason to hesitate before recognizing a cause of action." 596 U.S. at 494. One alternative remedy is the FTCA, which other courts have explained provides an adequate alternative remedy for similar claims. *See, e.g.*, *Oliveras*, 440 F. Supp. 3d at 373 ("[T]he Court finds that the existence of the FTCA as an alternative remedy qualifies as a special factor that counsels hesitation in extending *Bivens* to cover Plaintiff's claims."); *Edwards v. Gizzi*, 107 F.4th 81, 85–86 (2d Cir. 2024) (per curiam) (Park, J., concurring) (explaining that the plaintiff's excessive force claim "implicates special factors that counsel against extending *Bivens*," "[i]n particular," that the plaintiff "could have sought damages under the FTCA," which would cover claims that "some federal employees assaulted [the plaintiff] in the course of their official duties"). Courts have specifically found the FTCA is an adequate "alternative process to seek relief on [an] excessive force claim," because it "provides for money damages for claims 'arising . . . out of assault, battery,' and other torts with regard to acts or omissions of U.S. Government officers," essentially the claims Plaintiff brings here. *Churuk v. Canarozzi*, No. 22-CV-1395, 2024 WL 2149036, at *8 (D. Conn. Apr. 2, 2024) (quoting 28 U.S.C. § 2680(h)); *id.* at *9 ("conclud[ing] that [the p]laintiff's excessive force claim [was] not cognizable under *Bivens*"); *see also Nasiruddin v. Pliler*, No. 21-CV-7044, 2024 WL 2262664, at *8, *8 n.8 (S.D.N.Y. May 17, 2024) (explaining that the FTCA provides an adequate alternative remedy for excessive force

---

the same goes for Plaintiff's argument that this case, too, involves the Fourth Amendment, (*see* Pl.'s Mem. 11–12). *See Egbert*, 596 U.S. at 495 (rejecting *Bivens* remedy under Fourth Amendment for excessive force in the circumstances presented).

claims). Plaintiff catalogues a number of ways in which a *Bivens* claim could be preferable to an FTCA claim, (Pl.'s Mem. 15–16), but the Supreme Court has "never held that a *Bivens* alternative must afford" the same suite of rights as *Bivens* itself, *Egbert*, 596 U.S. at 497–98.

Another alternative remedy—this one created by the Executive, rather than Legislative, branch—is the Department of Justice Office of the Inspector General's ("OIG") complaint process. (*See* Defs.' Mem. 9 & n.6.) Courts have found the OIG process provides an alternative remedy for the misconduct of agents under the Department of Justice's remit, which includes FBI agents like Gonyo and Lombardi.[2] *See Massaquoi*, 2023 WL 5426738, at *2 (holding, in *Bivens* case against FBI agents, that "OIG procedures are adequate alternative remedies for *Bivens* purposes" and that courts are "not free to second-guess the Executive's determination that this 'remedial process [is] sufficient to secure an adequate level of deterrence'" (quoting *Egbert*, 596 U.S. at 498)); *Logsdon*, 91 F.4th at 1359 (holding, "as several other courts have already held since *Egbert*," that the "the Department of Justice's Office of the Inspector General (OIG) investigation procedure [is an] adequate alternative remed[y]").[3] Plaintiff does not address the

[2] *See generally Submitting a Complaint*, U.S. Dep't of Just. Off. of the Inspector Gen., https://oig.justice.gov/hotline/submit_complaint [https://perma.cc/3GJL-2X2M] ("You may report . . . misconduct relating to a DOJ employee . . . to the OIG Hotline. . . . The OIG accepts complaints related to the following DOJ components: Federal Bureau of Investigation . . ."); *Logsdon*, 91 F.4th at 1360 (explaining the DOJ OIG process in more detail).

[3] Following *Egbert*, it may also be appropriate to consider alternative remedies before reaching the second *Bivens* step, even if the facts of the constitutional foul themselves would otherwise present the same context. *See Sigalovskaya v. Braden*, 149 F.4th 226, 227 (2d Cir. 2025) (Pérez, J., concurring) (explaining that while the plaintiff's "false-arrest claim otherwise likely presents no new *Bivens* context," the "particular remedial structure set forth within" the defendants' agency's regulations counseled against extending *Bivens*); *see also Muniz v. United States*, 149 F.4th 256, 263–64 (3d Cir. 2025) (holding presence of alternative remedial scheme was a consideration appropriate at the "new context" first step); *id.* at 266–67 (Restrepo, J., concurring) (noting a circuit split as to whether "alternative remedial structures" are part of "the

OIG procedure at all in his opposition materials. (*See generally* Pl.'s Mem.) These two alternative remedies for Gonyo's and Lombardi's alleged conduct therefore independently counsel hesitation against extending *Bivens* here.

Accordingly, "[r]emaining faithful to the Supreme Court's firm guidance" and Congress's declination to provide a direct cause of action here, *Sigalovskaya*, 149 F.4th at 236 (Lee, J., concurring), the Court declines to extend *Bivens* to this context and grants the Motion as to Count II, and need not reach Defendants' qualified immunity argument. The Court also grants the Motion as to the *Bivens* claim against Gonyo's and Lombardi's unknown supervisor in Count III, because Plaintiff abandoned that claim in his opposition briefing.

<u>2. FTCA Claims</u>

Plaintiff's First, Fourth, and Fifth Counts are brought under the FTCA; the first is brought against the United States for false arrest, the fourth is against all Defendants, and the fifth is against Gonyo and Lombardi. (*See* Compl. ¶¶ 34–39, 65–71, 72–84.)

In enacting the FTCA, Congress created a "limited waiver by the United States of its sovereign immunity and allow[ed] for a tort suit against the United States under specified circumstances." *Liranzo v. United States*, 690 F.3d 78, 84–85 (2d Cir. 2012) (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007)); *see also Regnante v. Sec. & Exch. Officials*, 134 F. Supp. 3d 749, 767 (S.D.N.Y. 2015) (same). An FTCA action "against the United States is the exclusive remedy for a suit for damages for injury resulting from the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment." *Bearam v. Sommer*, No. 12-CV-1858, 2013 WL 5405492, at *8 (S.D.N.Y.

---

first step of [the Supreme Court's] test" for *Bivens* cases). Under this approach, the Court would reach the same conclusion without discussing the legal and factual differences in context here.

Sept. 25, 2013) (internal quotation marks and citation omitted); *see also Finley v. Hersh*, No. 12-CV-162, 2013 WL 3450270, at *7 (D. Vt. July 9, 2013) ("As to [the plaintiff's] tort claims, his exclusive remedy for monetary damages against the United States is under the Federal Tort Claims Act.").

The Court grants the Motion as to Counts I and V. As for Count I, Plaintiff abandoned his false arrest claim by his "failure to address th[is] claim[] in [his] opposition papers to this [M]otion," *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 405 (E.D.N.Y. 2018), so the Court dismisses that count. (*See* Defs.' Mem. 11 (addressing Plaintiff's false arrest FTCA claim); Pl.'s Mem. 16–18 (addressing only Plaintiff's assault-and-battery FTCA claim, albeit under a section header that mentions false arrest).) As for Count V, the Westfall Act[4] and FTCA do not authorize claims against individual officers for damages; the United States is the only proper defendant in claims like Plaintiff's, so any FTCA claims against Gonyo and Lombardi individually must be dismissed. *See Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983) ("The FTCA . . . authorizes suits only against the United States itself, not its individual agencies" or individuals); *Shaw v. United States Marshall*, No. 24-CV-5644, 2024 WL 4574146, at *2 (E.D.N.Y. Oct. 24, 2024) (same).[5] For the same reasons, if Count IV is to proceed at all, it can only proceed against the United States.

---

[4] The Westfall Act makes the FTCA "the exclusive remedy for most claims against [federal] Government employees arising out of their official conduct." *Hui v. Castaneda*, 559 U.S. 799, 806 (2010).

[5] The same statutory provisions require dismissal of Count VI, which reads as a common-law assault and battery claim against the United States, and against Gonyo and Lombardi for actions taken "within the scope of their employment." (Compl. ¶¶ 85–93.) "[C]ommon law tort claims against the individual defendants personally" must be dismissed "because federal officials are absolutely immune from liability for common law torts committed within the scope of their employment." *Deutsch v. Fed. Bureau of Prisons*, 737 F. Supp. 261, 269 (S.D.N.Y. 1990). To

Count IV is an assault and battery claim. (Compl. ¶¶ 65–71.) While the FTCA does not waive the United States' sovereign immunity for intentional torts, under the "law enforcement proviso," *Millbrook v. United States*, 569 U.S. 50, 54 (2013), it "permits . . . claims where, as here, federal law enforcement officers are alleged to have committed assault or battery," *Cuoco v. United States Bureau of Prisons*, No. 98-CV-9009, 2003 WL 22203727, at *4 (S.D.N.Y. Sept. 22, 2003) (citing 28 U.S.C. § 2680(h)); *see also Leytman v. U.S. Dep't of Homeland Sec.*, 804 F. App'x 78, 80 (2d Cir. 2020) (summary order) ("The FTCA expressly allows for intentional tort claims, including assault and battery, that are based on the conduct of 'investigative or law enforcement officers[.]'" (quoting 28 U.S.C. § 2680(h))). Defendants do not contest that Gonyo and Lombardi fall under the FTCA's "law enforcement proviso." (*See generally* Defs.' Mem.)

Because Plaintiff alleges the officers assaulted him in New York, New York substantive law governs his FTCA claim. *See Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that because "'[t]he source of substantive liability under the FTCA' is the 'law of the State,'" New York law governs an FTCA claim concerning a law enforcement encounter that took place in New York (quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994))). New York-law assault or battery claims brought against law enforcement officers track the elements of a Fourth Amendment excessive force claim. *See Marcano v. City of Schenectady*, 38 F. Supp. 3d 238, 263 (N.D.N.Y. 2014) ("Essentially, the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law."); *Vasquez v. Maloney*,

---

the extent this count is asserted against the United States, the Court understands it to be duplicative of Count IV, the FTCA-premised assault and battery claim against the United States. *See Cohen v. United States*, No. 23-CV-80599, 2025 WL 2611680, at *9 (S.D.N.Y. Sept. 9, 2025) ("Because [the p]laintiff's claim is a common-law tort claim against the United States, it is governed by the FTCA." (citing *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 80 (2d Cir. 2005)).

No. 15-CV-8848, 2020 WL 1309989, at *13 (S.D.N.Y. Mar. 19, 2020) (same); *Graham v. City of New York*, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) ("Federal excessive force claims and [New York] state law assault and battery claims against police officers are nearly identical.").

This inquiry "is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Factors to consider in assessing whether the force law enforcement officers used in a given situation was excessive under the Fourth Amendment include "the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Figueroa v. Mazza*, 825 F.3d 89, 105 (2d Cir. 2016); *see also Kayo v. Mertz*, 531 F. Supp. 3d 774, 796 (S.D.N.Y. 2021) (same).

Defendants' argument goes to the third factor in *Figueroa*—namely, that "the extent of injury inflicted," 825 F.3d at 105, was insufficient to constitute excessive force, (*see* Defs.' Mem. 13–15). In particular, Defendants point to cases in the handcuffing context that explain that "tight handcuffing does not constitute excessive force unless it causes injuries beyond pain and bruising," *Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (collecting cases), and that even "contusions, lacerations, abrasions, sprains, and pain of the kind alleged by Plaintiff" are not enough, (*see* Defs.' Mem. 13–15 (collecting cases)).

But Defendants' argument elides both the "case and fact specific" nature of the inquiry, *Tracy*, 623 F.3d at 96, and the other factors courts should consider in Fourth Amendment interest-balancing, *see Figueroa*, 825 F.3d at 105. Force that was excessive under the Fourth

Amendment in one context may not be excessive in another because "[t]he degree of permissible force depends upon the circumstances." *Gothberg v. Town of Plainville*, 148 F. Supp. 3d 168, 182 (D. Conn. 2015); *see also Mena*, 544 U.S. at 102–03 (Kennedy, J., concurring) ("[I]t is a matter of first concern that excessive force is not used on the persons detained, especially when these persons, though lawfully detained . . . are not themselves suspected of any involvement in criminal activity. The use of handcuffs is the use of force, and such force must be objectively reasonable under the circumstances.").

Here, Plaintiff was a "visibly blind," "frail," and "elderly" man, and the injuries he allegedly suffered from being "slammed" to the ground and cuffed in the way he was included "injuries to his right knee," "traumatic injuries to his lower back, including a lumbar sprain," and from the cuffing, "a contusion and laceration to his left hand and wrist, abrasions down the left side of his arm, [and] bilateral wrist cuff marks, causing him to bleed on the palm of his left hand," so Plaintiff has alleged that force was used and that he suffered injuries in the encounter, from the handcuffing and otherwise. (Compl. ¶¶ 21–23.) Plaintiff further claims that throughout the encounter, he did not "threaten any officer" or "[]present a danger," "did not resist arrest" and "complied with the[ officers'] instructions"—after which the "slamm[ing]" occurred—and was "not under investigation for any crime." (*Id.* ¶¶ 24–25.)

The combination of these allegations is that Plaintiff has plausibly claimed the "need for the application of force," *Figueroa*, 825 F.3d at 105, was absent at least at some point during the encounter. Consequently, the force applied—at least after he complied with officers' instructions and the officers could see—could have been gratuitous because there was no relationship between the force and the need for it, so it is plausible the use of force was excessive. *See, e.g.*, *Vyrkin v. Triboro Bridge & Tunnel Auth.*, No. 18-CV-12106, 2021 WL

797654, at *6 (S.D.N.Y. Mar. 2, 2021) (finding the plaintiff had established triable issue of fact on his excessive force claims on allegations that "due to his age and prior medical conditions, [officers'] use of force [in transporting him] was excessive" although defendants had argued "any injury was de minimis"); *Davis v. Murphy*, No. 12-CV-3297, 2018 WL 10070524, at *9 (S.D.N.Y. Sept. 24, 2018) ("At this point, there was no justification for the continued use of force, because Plaintiff posed no continuing threat to the officers that justified [it]."); *Wilson v. City of New York*, 800 F. Supp. 1098, 1103 (E.D.N.Y. 1992) (denying qualified immunity on excessive force claim to officer who "was not threatened physically by the middle-aged [plaintiff] with a physical disability, yet he used excessive physical force to handcuff her and drag her into a police car"); *contra DiGennaro v. Town of Gates Police Dep't*, No. 07-CV-6426, 2013 WL 3097066, at *13 (W.D.N.Y. June 18, 2013) (dismissing excessive force claim where, "while [the p]laintiff focuses on [his] 'advanced age and physical condition,' it is clear that those factors did not prevent him from mounting vigorous physical opposition to the officers, which in turn entitled them to use reasonable force").[6]

Accordingly, Plaintiff has plausibly stated an assault and battery claim under the FTCA against the United States for Gonyo and Lombardi's actions, so the Court denies the Motion as to Count IV to the extent it is asserted against the United States.

---

[6] Defendants contend the Complaint includes "factual inaccuracies" and contradicts "body worn camera footage in Plaintiff's possession" showing that he "was in handcuffs for no more than two to three minutes." (Defs.' Mem. 3, 12 n.7.) Whether or not that is so, at this stage, "the Court must accept Plaintiff['s] allegations as true." *See Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 324 (S.D.N.Y. 2018).

## III. Conclusion

For the foregoing reasons, the Court grants the Motion as to all claims except the assault-and-battery FTCA claim against the United States. Because Counts I and III were abandoned, they are dismissed with prejudice. *See Manes v. JPMorgan Chase Bank, N.A.*, No. 20-CV-11059, 2022 WL 671631, at *5 n.9 (S.D.N.Y Mar. 7, 2022) (dismissing abandoned claims with prejudice); *Jennings v. Hunt Cos., Inc.*, 367 F. Supp. 3d 66, 69–70 (S.D.N.Y. 2019) (same). The Court also dismisses Counts II, V, and VI with prejudice because "the problem with [them] is substantive such that amendment would be futile," *Owoyemi v. Credit Corp. Sols. Inc.*, 596 F. Supp. 3d 514, 521 (S.D.N.Y. 2022) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)), and because their deficiencies are substantially those raised in Defendants' pre-motion letter, after which Plaintiff did not seek to amend the Complaint, *see Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 472 (S.D.N.Y. 2023).[7] The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 29).

SO ORDERED.

Dated: September 14, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge

---

[7] Specifically, amendment cannot cure Count VI or V because there is no New York state or federal cause of action against these individual Defendants for actions committed in the scope of their employment or against the United States, *see supra* note 5. And Plaintiff's request to amend did not proffer any facts that would lead the Court to recognize a *Bivens* claim here so as to resurrect Count II, *see supra* Part II(B)(1); *see also Negron v. United States*, No. 19-CV-5442, 2020 WL 5634304, at *10 (S.D.N.Y. Sept. 21, 2020) (dismissing with prejudice where "[a]bsent [the] Supreme Court . . . creating a new *Bivens* remedy on all fours with [the p]laintiff's alleged *Bivens* Claims," any "[a]mended [c]omplaint would undoubtedly suffer from the same deficiencies as [the p]laintiff's [original c]omplaint"). (*See* Pl.'s Mem. 18–19 (resting on the memorandum's legal or substantive arguments in requesting leave to amend).)